UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | Criminal Action No. 5: 18-019-DCR |
| ) | and |
| V. ) | Civil Action No. 5: 19-408-DCR |
| ) | |
| SCOTT W. SULIK, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant/Movant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Scott Sulik pleaded guilty to one count of cyberstalking in violation of 18 U.S.C. § 2261A(2) and was sentenced to 48 months' imprisonment. The United States Court of Appeals for the Sixth Circuit affirmed Sulik's sentence on appeal. *United States v. Sulik*, 929 F.3d 335 (6th Cir. 2019). Sulik has now filed a motion to vacate, correct, or set aside his sentence under 28 U.S.C. § 2255 based on the argument that his attorney was constitutionally ineffective. [Record No. 46] The motion will be denied because Sulik has not established that counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by his attorney's performance.

I.

On February 22, 2018, a federal grand jury in Lexington, Kentucky indicted Sulik on one count of cyberstalking in violation of 18 U.S.C. § 2261A(2), and one count of being a fugitive from justice in possession of a firearm in violation of 18 U.S.C. § 922(g)(2). Regarding the cyberstalking charge, the grand jury found that, from September 2017 to December 2017, with the intent to injure, harass, and intimidate the victim L.G., Sulik used

- 1 -

electronic mail to engage in a course of conduct that would reasonably be expected to cause substantial emotional distress to L.G. [Record No. 1] Attorney Rachel Yavelak was appointed to represent Sulik under the Criminal Justice Act pursuant to 18 U.S.C. § 3006A. Sulik entered a plea of not guilty and the matter was scheduled for a jury trial.

Sulik filed a motion for re-arraignment on May 30, 2018, and appeared before the undersigned for a change-of-plea hearing on June 8, 2018. Sulik pleaded guilty to the cyberstalking charge with the understanding that the government would move to dismiss the firearm charge at the time of the sentencing hearing. The parties' written plea agreement provided, in part:

> a. Beginning on a date in September 2017 and continuing through a date in December 2017, the Defendant sent a series of threatening emails to an email account associated with L.G., a member of the United States Congress. The Defendant sent these emails from the address stealthvadertrader@gmail.com, through Gmail, an electronic communication service and electronic communication system of interstate commerce. The Defendant resided in Mesa, Arizona when he began this course of contact and moved to Versailles, Kentucky in November 2017. The Defendant continued to send emails to L.G. from his Versailles residence, which is in Woodford County, in the Eastern District of Kentucky.
>
> b. The Defendant intended to harass and intimidate L.G. through the emails that he sent. Among numerous other emails, the Defendant made the following statements to L.G.: "You put your family at risk . . ."; ". . . I'm threating you."; "What are you going to do before I erase you?"; and "Show me anyone who is going to protect you against me. . . ." The Defendant understood that these and other emails that he sent were of a nature that would reasonably be expected to cause substantial emotional distress to the recipient.

Sulik waived the right to appeal his guilty plea and conviction. He also waived the right to collaterally attack the guilty plea, conviction, and sentence, with the exception of claims of ineffective assistance of counsel. Sulik was sentenced to 48 months' imprisonment, with credit for time spent in federal custody. [Record No. 31] The Sixth Circuit affirmed

Sulik's sentence on appeal. *Sulik*, 929 F.3d 335. Sulik now claims that Yavelak "repeatedly lied and ineptly represented" him during the proceedings. [Record No. 46, p. 4]

Sulik makes the following allegations in support of these claims:

1) Defendant was told repeatedly that the Sen. Rand Paul/Rene Boucher case was State not Federal, therefore not applicable. This was false.

2) Defendant was told for 11 months that all Unified Market Theory information was not included in Discovery, subsequent Counsel revealed that it was [included].

3) Ms. Yavelak disclosed privileged information to Judge Bunning during a hearing in which Defendant was assigned new counsel.

4) Ms. Yavelak said Defendant had no right to face accuser in a Trial and could not wear dress blues.

5) Ms. Yavelak said all jail time served by Defendant in Woodford County Jail would count as Time Served toward Federal sentence. Subsequent counsel said this was not true and therefore over 20 months in jail did NOT count towards serving of Federal sentence.

6) Ms. Yavelak appeared at a Hearing seemingly incapacitated, with pupils dilated, and unable to follow proceedings nor turn pages, relying on Defendant to do so.

The United States has filed a response in opposition to Sulik's motion, which includes an affidavit from Yavelak. [Record No. 54] Sulik was permitted to tender a reply within 30 days of the United States' response. However, more than 30 days have passed and he has failed to file a reply.

## II.

A defendant who moves to vacate his sentence under 28 U.S.C. § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the Court was without jurisdiction to impose the sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. To prevail

under § 2255, a petitioner must demonstrate the existence of "an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Hamblen v. United States*, 591 F.3d 471, 473 (6th Cir. 2009).

The Sixth Amendment to the United States Constitution guarantees that a criminal defendant shall enjoy the right to have the assistance of counsel for his defense. *Beasley v. United States*, 491 F.2d 687, 692 (6th Cir. 1974). To succeed on a claim of ineffective assistance of counsel, the defendant must satisfy two elements: that counsel's performance fell below an objective standard of reasonableness and that the defendant was prejudiced by counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

Although Sulik does not say so explicitly, he appears to criticize his attorney's influence on his decision to plead guilty. A defendant who seeks to challenge the validity of his guilty plea based upon a claim of ineffective assistance of counsel must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003). Sulik has the burden of proving his allegations by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). The Court examines each Sulik's claims with the foregoing standards in mind.

### III.

**A.     Counsel's Alleged Failure to Provide Accurate Information Regarding the *Boucher* Case**

Sulik's argument refers to *United States v. Boucher*, Criminal Action No. 1: 18-004-MOB, filed in the United States District Court for the Western District of Kentucky, Bowling

Green Division. The case involves Defendant Rene Boucher's November 2017 attack on his then-neighbor, United States Senator Rand Paul. Boucher ultimately pleaded guilty to assaulting a member of Congress in violation of 18 U.S.C. § 351(e). Although Boucher's guidelines range was 21 to 27 months in prison, the district court sentenced him to 30 days' imprisonment.[1]

Sulik claims that Yavelak told him repeatedly that the *Boucher* matter was a state proceeding and was, therefore, inapplicable to the present case. Sulik's claim is unpersuasive for multiple reasons. First, Yavelak filed a motion for a downward variance that belies Sulik's assertion that she advised him that *Boucher* had no bearing on this matter. [Record No. 28] In the memorandum in support of a variance, Yavelak cited the district court's decision in *Boucher* and argued that a below-guidelines sentence might be appropriate in Sulik's case, as well. *Id.*

Sulik fails to explain how counsel's handling of this information fell below an objective standard of reasonable professional conduct. Additionally, he fails to explain how Yavelak's alleged misrepresentations regarding the *Boucher* matter impacted his decision to plead guilty here. In other words, Sulik has not indicated that, had Yavelak informed him of different circumstances in *Boucher*, he would have elected to proceed to trial instead of pleading guilty. Accordingly, this ineffective-assistance-of-counsel claim cannot succeed.

B.    **The Alleged Failure to Provide "Unified Market Theory" Discovery**

---

[1] The United States Court of Appeals vacated the 30-day sentence, concluding that it was substantively unreasonable. *See United States v. Boucher*, 937 F.3d 702 (6th Cir. 2019). Boucher filed a petition for a writ of certiorari with the United States Supreme Court which remains pending. [No. 19-611]

Sulik's next ground for relief fares no better. He claims that Yavelak told him that "unified market theory" information was not included in the discovery material, while his subsequent counsel revealed that it was. Regardless of whether Yavelak provided such discovery to Sulik (and Yavelak contends that she did), he has not explained what possible relevance it has to his cyberstalking charge or how counsel's failure to provide it affected his decision to plead guilty. Put simply, he has not presented information that would even come close to satisfying either prong of an ineffective-assistance-of-counsel claim under *Strickland* and *Hill*.

C.  **The Alleged Disclosure of Privileged Information to Judge Bunning**

During the investigation of Sulik's cyberstalking offense, agents discovered that he possessed images depicting minors engaging in sexually explicit conduct. Sulik was indicted for that offense on February 22, 2018, in Lexington Criminal Action No. 5: 18-CR-020 and Yavelak was appointed to represent Sulik in that matter, as well. The case was randomly assigned to District Judge Joseph M. Hood, but was later transferred to District Judge David L. Bunning.[2] [Record No. 25] Following a sealed bench conference with Judge Bunning on October 19, 2018, Yavelak was permitted to withdraw, and attorney Pamela Ledgewood was appointed as Sulik's new counsel. The case proceeded to trial. A jury convicted Sulik of the sole count of the indictment on February 13, 2019, and he was sentenced to 57 months' imprisonment, to run consecutive to the 48-month term imposed in the instant matter.

Sulik alleges that Yavelak disclosed privileged information to Judge Bunning during the sealed bench conference on October 19, 2018. The Court need not consider the nature of

---

[2] The case was reassigned to the undersigned on January 17, 2019.

the alleged disclosures and whether they fall within an exception to the attorney-client privilege. *See* Kentucky Rule of Evidence 503. Sulik pleaded guilty to cyberstalking on June 8, 2018—well before the alleged disclosures in Lexington Criminal Action No. 5: 18-CR-020. Accordingly, he does not and cannot show how these alleged disclosures prejudiced him, i.e., that the disclosures had any impact on his decision to forego trial and enter a guilty plea in this case.

### D. Right to Confront Accuser and Wear Military Uniform During Trial

Sulik next claims that Yavelak was ineffective because she told him that he had no right to confront his accuser if he proceeded to trial. Yavelak contradicts this assertion in her affidavit, reporting that she advised Sulik that L.G., a United States Congressman, would most likely have to be subpoenaed, but doing so was an option. [Record No. 54-1] Yavelak's statement is supported by Sulik's own testimony in Lexington Criminal Action No. 18-CR-020, in which he indicated that Yavelak advised him that L.G. would not attend trial voluntarily: "I told [Yavelak] I have a right to face my accusers. And she goes . . . I don't think he's going to come down to trial." [Record No. 44, p. 17]

But even if Yavelak had advised Sulik that he could not confront L.G. at trial, this argument is unpersuasive because this Court advised him that he could. The Court engaged in a thorough colloquy with the defendant during his change-of-plea hearing. The undersigned advised Sulik:

> [T]here are some rights that you do waive or give up by entering a guilty plea. So let me go through those. If the case were to proceed to a jury trial, you would have the right of confrontation, which simply means that you would have the right to see, hear, and through your attorney cross-examine any witnesses that might testify against you. You would also have the right to have subpoenas issued. That would be to compel witnesses to attend trial and testify on your own behalf if you wish to call witnesses. . . . [I]f I do accept a plea of guilty

> from you according to your plea agreement, there would not be a trial as we've discussed, and you would lose or give up the rights that I've described to you. Do you understand that?

[Record No. 39, p. 24] Sulik affirmed that he understood. *Id.*

Sulik was also advised that, if he wanted to continue and proceed to a jury trial, he had every right to do so. *Id.* at p. 22. However, he reported that he intended to enter a guilty plea because he was, in fact, guilty of the cyberstalking charge. *Id.* at pp. 27. Sulik informed the Court that he was satisfied with Yavelak's advice and representation. *Id.* at p. 8. Additionally, he repeatedly affirmed that he understood the charge against him, the terms of plea agreement, the re-arraignment proceeding, and the possible penalties he could face.

Statements made in court under oath carry a strong presumption of verity. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Because this Court scrupulously followed the procedure for taking a guilty plea pursuant to Rule 11 of the Federal Rules of Criminal Procedure, Sulik is bound by the statements that he made in response to the Court's inquiries. Assuming *arguendo* that Yavelak told Sulik that he could not confront his accuser at trial, Sulik has not explained how he was prejudiced by this advice, considering the Court corrected the alleged misinformation during the change-of-plea hearing. Importantly, Sulik has not elaborated on how his alleged inability to confront L.G. impacted his decision to plead guilty, nor has he alleged that he would have proceeded to trial had Yavelak given him different advice. Accordingly, he has not satisfied his burden of proving an ineffective-assistance-of-counsel claim.

Sulik also complains that Yavelak told him that he would not be permitted to wear his "dress blues" during trial. Yavelak disputes this, reporting that she told Sulik she would ask the Court whether he could wear his dress uniform. Even if Sulik's version of events is true,

however, Yavelak's advice would not fall below an objective standard of reasonableness. Indeed, Sulik would not have been permitted to wear his dress uniform during a trial of this matter.

As Attorney Ledgewood stated during a pretrial hearing in Lexington Criminal Action No. 5: 18-CR-020, "I know Mr. Sulik had discussions with his first counsel about his desire to wear his dress blue Marine uniform during his trial. I've done a little looking into that, and it would appear to me that protocol from the military is unfortunately he is not supposed to do that. . . . I think were this a wedding, a military funeral, or this a military funeral, that he could quite rightly and quite proudly wear those. I've been telling him that I do not believe that he can wear that." [Record No. 77, pp. 24-25] The Court agreed: "You're correct in your assessment. What I will certainly allow is he can explain his background, or you can explain his background, his military service. . . . But in terms of wearing a dress uniform, I agree with your initial assessment. I've looked at this on occasions in the past, and that's the procedure that I follow."

Trial judges are afforded broad discretion in management of the courtroom. *Marzec v. Newburgh & S. Shore Ry. Co.*, 831 F.2d 296 (6th Cir. 1987). *See also Sin v. Fischer*, No. 01CIV.9376, 2002 WL 1751351, at *2 (S.D.N.Y. July 26, 2002) ("A trial judge has broad discretion to manage courtroom logistics."). And while a defendant may not be forced to stand trial wearing identifiable prison attire, he has no right to wear a dress military uniform under these circumstances. *See Estelle v. Williams*, 425 U.S. 501, 509 (1976); *Van Gorder v. Allerd*, 387 F. Supp. 2d 251, 261 (W.D.N.Y. 2005).

  **E.**  **Time Credited Toward Sulik's Federal Sentence**

On January 10, 2018, Sulik was arrested at his home in Woodford County, Kentucky, on a felony theft warrant out of Dane County, Wisconsin. Before he could be extradited to Wisconsin, Sulik was indicted in the instant case. A federal arrest warrant was issued and a writ of habeas corpus *ad prosequendum* was issued on February 23, 2018. Sulik was delivered to the custody of the United States Marshal Service, where he remained throughout the remainder of the proceeding.

While the factual details of this claim are far from clear, Sulik asserts that Yavelak advised him that all of the time he spent in the Woodford County Jail would count as time served toward his federal sentence. Yavelak responds to this claim as follows:

> I never told him that all time that Mr. Sulik spent in the Woodford County Jail would apply to his sentence. I told him that time that he spent at the jail in federal custody would be calculated by the BOP, and they would determine what portion of the time he had spent at the Woodford County Jail would likely be credited toward his sentence in this case. I also told him that it was likely that if he were convicted in each federal case that he had that it was likely that the time spent at the Woodford County Jail would only apply to the sentenced received in one of his federal cases should he be convicted on both.

[Record No. 54-1]

Consistent with Yavelak's statement, the Bureau of Prisons is responsible for computing jail-time credit. *United States v. Wilson*, 503 U.S. 329, 335 (1992) (citing 18 U.S.C. § 3585(b)). And claims concerning the correct calculation of a sentence generally must be raised under 28 U.S.C. § 2241. *United States v. Jalili*, 925 F.2d 889, 893-94 (6th Cir. 1991). Sulik has not provided any evidence indicating that the BOP has improperly calculated his credit for time spent in federal custody at the Woodford County Jail. And he certainly has not established by a preponderance of the evidence that he would have proceeded to trial instead

of pleading guilty had Yavelak given different advice concerning computation of jail-time credit.

F. **Claim of Alleged Incapacity of Counsel**

Sulik suggests that Yavelak was under the influence of drugs or alcohol during "a hearing," in which she was "seemingly incapacitated" and unable to follow the proceedings.[3] Even assuming this allegation is true (without so finding) Sulik does not allege that he suffered any prejudice as a result of counsel's alleged condition, nor does he indicate that it had any influence on his decision to enter a guilty plea. Further, at no time during any Court proceedings did Yavelak appear to be under the influence. Accordingly, the claim fails.

**IV.**

When the Court denies a motion under § 2255, it must decide whether to grant a certificate of appealability, which would allow the defendant to appeal the adverse decision. *See* Rule 11 of the Rules Governing § 2255 Proceedings; 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may be issued only when the defendant has "made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To satisfy this burden, the defendant must show that reasonable jurists could debate whether the petition should have been resolved in a different way or that the issues involved were adequate to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

---

[3] Yavelak vigorously denies this allegation. Although not a basis for this decision, it is notable that Sulik remained silent even though he now claims that his lawyer was under the influence of drugs or alcohol during an unspecified court proceeding. No one else involved in any of Sulik's proceedings (judges, court staff, the prosecutor) raised such an issue despite working in relatively close quarters, including bench conferences. *See United States v. Singleton*, Nos. 5: 13-CR-8-KKC; 5: 17-24-KKC, 2018 WL 5075982, at *31 n. 32 (Mar. 20, 2018) (rejecting similar claim in a § 2255 motion). It is unfortunate that Sulik seeks to harm the reputation of his attorney through such a baseless claim.

Sulik has not satisfied this standard.  He has listed a number of grievances with his attorney, but has not stated allegations that come close to meeting the standard for ineffective assistance under *Strickland*, 466 U.S. 668 and *Hill*, 474 U.S. 52.  Importantly, he has not indicated how any aspect of his counsel's performance prejudiced him or impacted his decision to plead guilty instead of proceeding to trial.  Accordingly, reasonable jurists would not debate whether Sulik has articulated a cognizable ineffective-assistance-of-counsel claim.  Reasonable jurists would clearly conclude that he has failed in this endeavor.

**V.**

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that Sulik's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Record No. 46] is **DENIED**.

Dated: January 16, 2020.



Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky