UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal Action No. 5: 18-019-DCR |
| V. | ) ) | |
| SCOTT W. SULIK, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Scott Sulik has filed a motion for compassionate release under the provisions of 18 U.S.C. § 3582(c)(1)(A). [Record No. 59] However, he has not demonstrated extraordinary and compelling reasons for early release. Further, the considerations under 18 U.S.C. § 3553(a) do not weigh in favor of granting the relief requested.

**I. Background**

Defendant Sulik was sentenced to 48 months' imprisonment after pleading guilty to cyberstalking in violation of 18 U.S.C. § 2261A(2). During the course of the cyberstalking investigation, officers discovered images of child pornography on Sulik's electronic devices and he was charged with possession of child pornography in Lexington Criminal Action No. 5: 18-020-DCR. A jury found him guilty of the sole count of the indictment and he was sentenced to 57 months' imprisonment, to run consecutive to the 48-month sentence imposed

in the instant matter.[1]  Both sentences were affirmed on appeal and Sulik's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 was denied.

## II. Compassionate Release

Requests for compassionate release are evaluated under 18 U.S.C. § 3582(c)(1)(A).  It provides:

> the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,[2] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Consistent with the language of the statute, district courts generally apply a three-step test when deciding motions for compassionate release.  *See United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020).  First, the court must determine whether extraordinary and compelling reasons warranting a sentence reduction exist.  *Id*.  Second, the court must consider any *applicable* policy statements found in the United States Sentencing Guidelines.  *Id.* at 1108.  Third, the court must determine whether relief is warranted under the factors stated in 18 U.S.C. § 3553(a).  *Id.*

---

[1]   Sulik filed the motion for compassionate release in the instant case only, but he appears to seek relief from the sentences imposed in both cases.

[2]   Sulik included documentation indicating that he requested compassionate release from the Warden on October 4, 2020.  [Record No. 59-4]

There is no applicable guidelines policy statement when a prisoner files a motion for compassionate relief on his own behalf. *Id.* at 1108-09. Accordingly, when dealing with motions filed by prisoners, the Court side-steps the second part of the three-step analysis. *Id.* at 1111. Additionally, "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, --F.3d--, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021).

"Section 3582(c)(1)(A) does not define 'extraordinary and compelling reasons.'" *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). Instead, when an imprisoned person files a motion for compassionate release, the district court has "full discretion . . . to determine whether an extraordinary and compelling reason justifies compassionate release." *Jones*, 908 F.3d at 1109. While the Court is in no way bound by the policy statement found in § 1B.13 of the Sentencing Guidelines, it still provides a helpful starting point for deciding whether extraordinary and compelling reasons exist.

As relevant here, the application notes to § 1B1.13 provide the following:

> (A)   Medical Condition of the Defendant—
> (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). . . . Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii)   The defendant is—
> (I)   suffering from a serious physical or medical condition,
> (II)   suffering from a serious functional or cognitive impairment, or
> (III)   experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. . . .

U.S.S.G. § 1B1.13 cmt. n.1.

Sulik contends that a combination of factors warrants his early release. Most notably, he contends that he has COPD and is concerned about contracting COVID-19 at his institution of confinement, FCI Fort Dix. The Centers for Disease Control report that adults with COPD are at an increased risk of severe illness from the virus that causes COVID-19.[3] While Sulik makes general claims that he is unable to practice social distancing at FCI Fort Dix, he has not identified any specific facts that rise to the level of extraordinary and compelling circumstances. As of January 21, 2021, 120 of the 2,729 inmates housed at FCI Fort Dix are positive for COVID-19. And while any number of cases is concerning, this data indicates that the number of positive cases has decreased substantially since the filing of Sulik's motion and that BOP officials are implementing measures to control the spread of the virus.[4]

Sulik also reports prehypertension and leg injuries, which he claims are not being treated properly. However, he has not provided sufficient factual detail about these conditions to explain why they would weigh in favor of granting compassionate release.[5]

Sulik next contends that his "unusually long sentence" weighs in favor of release. However, the sentence in the instant matter was near the low end of the advisory guidelines

---

[3]   CENTERS FOR DISEASE CONTROL AND PREVENTION, *People with Certain Medical Conditions*, (updated Dec. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[4]   The BOP is presently working with the Centers for Disease Control and Prevention and a public-private partnership established by the federal government, known as Operation Warp Speed, to ensure that the BOP remains prepared to administer the COVID-19 vaccine to inmates as soon as it is available. The Court has been advised that, as of January 4, 2021, doses of the vaccine have been delivered to 48 BOP facilities in various regions of the country.

[5]   Sulik claims he attempted to obtain his medical records but was unsuccessful. Regardless, he has not explained, in his own words, what problems these conditions cause or why he believes the care BOP provides for them is insufficient.

range of 46 to 57 months' imprisonment. And the sentence in Lexington Criminal Action No. 5: 18-020 was in the middle of the 51-to-63 month guideline range. To the extent the defendant contends the sentences should not have been imposed consecutively, this argument has been rejected by the Sixth Circuit on direct appeal. Sulik does not provide any specific additional argumentation other than he simply thinks the sentences are too long.

Finally, the defendant contends that release is appropriate based on his "remarkable record of rehabilitation." Sulik correctly observes that compassionate release may not be based on rehabilitation alone. *See Ruffin*, 978 F.3d at 1009 (citing 28 U.S.C. § 994(t)). However, it is a factor the Court may consider. Sulik contends that he has "grow[n]" and "mature[d]" during his time in custody and that he "unequivocally accepts responsibility for his criminal conduct."

While the Court does not doubt that there is some sincerity in the defendant's words, he appears reluctant to fully accept responsibility for the conduct of which he has been adjudged guilty. Borrowing language from the Sixth Circuit's opinion in his child-pornography appeal, he describes his cyberstalking conduct as follows: "[S]*omeone* started sending emails to [a member of Congress]" (emphasis added). Further, it does not appear that the defendant has ever accepted responsibility for possessing child pornography. Additionally, Sulik has not identified any educational courses, employment, or other rehabilitative activity that he has performed while in custody.

The reasons the defendant has identified do not constitute extraordinary and compelling reasons warranting a sentence reduction. But even if they did, the factors identified under 18 U.S.C. § 3553(a) do not weigh in favor of granting the relief requested. First, Sulik's crimes were very serious. Over a period of months in 2017, he sent a series of threatening emails to

a member of United States Congress, which placed the Congressman in fear for the safety of himself and his family. Then, in January 2018, he possessed images of minor females, ranging in age from approximately three to thirteen years old, engaging in sexual conduct. A significant sentence is needed to reflect the seriousness of these crimes, promote respect for the law, and provide just punishment for the offenses.

Further, as explained during the defendant's sentencing hearings, a substantial sentence is warranted for rehabilitative purposes and perhaps mental health treatment, as determined by the BOP. The defendant appeared to have anger management issues, as well as medical issues that hopefully will be addressed by the BOP.

The within-guidelines sentences promote avoidance of unwarranted sentencing disparities. The defendant asks the Court to consider that the sentence in his child pornography case would have been "much shorter" had he pleaded guilty and not proceeded to trial. That is true. But the fact of the matter is that he did not plead guilty. Instead, Sulik testified at trial and denied knowingly possessing the images of child pornography. As reflected by the guilty verdict, the jury did not believe that he was telling the truth. The Court declines to speculate regarding whether the United States would have entered into a plea agreement with the defendant and what the recommended sentence would have been.

One final note: The defendant writes of his sentence of "105 months . . . of imprisonment in this case." As the defendant is well aware, he was sentenced to separate sentences in two different cases for unrelated crimes. Imposing the sentences concurrently, as Sulik desires, would undermine the purpose of achieving reasonable punishments for his distinct crimes and would create unwarranted sentencing disparities.

Based on the foregoing, the defendant's sentences of 48 months' imprisonment in Lexington Criminal Action No. 5: 18-019 and 57 months' imprisonment in Lexington Criminal Action No. 5: 18-020 remain minimally sufficient, but not greater than necessary, to serve the purposes of § 3553(a).

### III.  Request for Counsel

The defendant has included a one-sentence request that "learned counsel be appointed to assist [him] moving forward."  [Record No. 59-1]  However, the constitutional right to appointed counsel does not extend to a post-conviction motion for a sentence reduction under § 3582(c).  *See Shedwick v. Warden*, 2016 WL 11005052, at *3 (6th Cir. Dec. 30, 2016) ("[T]here is no right to counsel in a post-conviction action."); *United States v. Johnson*, 2016 WL 10704239, at *3 (6th Cir. Nov. 21, 2016) (recognizing that historically, there has been no right to counsel in motions brought under § 3582(c)(2)).

The Court has discretion to determine whether appointment of counsel is warranted. *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986).  This determination depends on various factors including the complexity of the case and the petitioner's ability to present the issues involved.  *See Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993).  Here, the potential issues are straightforward and the defendant has demonstrated an above-average familiarity with the applicable law and an ability to articulate the issues he wishes to present.  Accordingly, appointment of counsel is unnecessary and would be a waste of resources.

### IV.  Conclusion

Based on the foregoing, it is hereby

**ORDERED** that the defendant's motion for compassionate release and for the appointment of counsel [Record No. 59] is **DENIED**.

- 8 -

Dated: January 22, 2021.

*[Signature]*
Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky